IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSEPH P. BERTRAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:08-01123 |
| | ) | JUDGE CAMPBELL/KNOWLES |
| | ) | |
| | ) | JURY DEMAND |
| YELLOW TRANSPORTATION, INC., | ) | |
| LARRY BRINEY, CARL HASTINGS, | ) | |
| KEITH DAILEY, individually and in | ) | |
| their Official Capacity as Line Haul | ) | |
| Shift Operation Manager, and LOCAL | ) | |
| UNION 480 TEAMSTERS FREIGHT | ) | |
| EMPLOYEES INTERNATIONAL | ) | |
| BROTHERHOOD OF TEAMSTERS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. Background and Prior Proceedings

This matter is before the Court upon the Joint Motion of all Defendants to Dismiss this

Action as a Discovery Sanction, or in the Alternative, Motion to Compel. Docket No. 408.

Defendants have filed a supporting Memorandum (Docket No. 409), and the Affidavit of one of

Defendants' counsel (Docket No. 410). Plaintiff, proceeding pro se, has filed a Response in

Opposition to the Motion (Docket No. 427), as well as his own Affidavit (Docket No. 428).

Because the instant Motion should be viewed in the context of the history of this action, the

Court will discuss that history in some detail.

Plaintiff, acting pro se, sued Defendants under Title VII of the Civil Rights Act of 1964

for retaliatory discharge and retaliatory termination. Plaintiff complained of racial discrimination, sex-based discrimination, national origin discrimination, violations of the Family and Medical Leave Act, defamation, and sexual harassment. Docket No. 21. Plaintiff asserted claims under § 1983, the Fourteenth Amendment, Title VI, Title IX, and Title X, as well as claims under the Tennessee Human Rights Act and claims under 49 CFR Part 40 (pertaining to work place drug and alcohol testing). *Id.* Most of Plaintiff's claims were subsequently dismissed. Docket Nos. 138, 139, 180.

On June 15, 2009, Defendants filed a Motion for Protective Order regarding several depositions that had been noticed by Plaintiff. Docket No. 108. In their supporting Memorandum, Defendants stated that, on June 9, 2009, Plaintiff had unilaterally noticed the depositions of six (6) individuals without any consultation or agreement with any of counsel for Defendants. Defendants' counsel were unavailable for depositions on that date. Defendants stated in part as follows:

> On behalf of counsel for all Defendants, Ms. Lisa Jones, attempted to reach Plaintiff by telephone on June 9, 2009, and June 12, 2009. Ms. Jones left multiple messages for Plaintiff to return her call to discuss Plaintiff's noticed deposition. *As of June 15, 2009, Plaintiff had not returned Ms. Jones' phone calls.* Accordingly, the parties have been unable to resolve this discovery dispute.

Docket No. 109, p. 2 (emphasis added).

The Court granted the Motion for Protective Order, stating in part, "Plaintiff and Defendants shall cooperate in the scheduling [of] these depositions for a date convenient to the parties and witnesses." Docket No. 110, p. 2.

The day after the Court entered the foregoing Order, Plaintiff again unilaterally noticed

2

six (6) depositions for July 23, 2009, without communicating with counsel for Defendants to schedule appropriate deposition dates. *See* Docket No. 119. The Court subsequently held a conference call with Plaintiff and counsel for Defendants on June 29, 2009, emphasizing to Plaintiff the language in its previous Order that, "Plaintiff and Defendants shall cooperate in the scheduling these [*sic*] depositions for a date convenient to the parties and witnesses. Docket No. 121.

On Thursday, October 1, 2009, Defendant Yellow Transportation filed a "Motion for Conference to Resolve Discovery Dispute." Docket No. 181. The Motion recited the fact that, following extensive discussions regarding the scheduling of depositions, Plaintiff and Defendant had agreed that Defendant would take Plaintiff's deposition on October 6, 2009. Docket No. 181, p. 1. On September 21, 2009, Defendant had sent Plaintiff a deposition notice, confirming the date of Tuesday, October 6, 2009, but the notice stated that the method of recording the deposition would be by videotape. *Id.*

Plaintiff apparently had not considered the possibility that his deposition would be videotaped when he agreed to the October 6 date, and some ten (10) days later, on October 1, 2009, Plaintiff notified Defendants that he objected to the videotaping of his deposition. *Id.*, p. 2. While Defendants explained to Plaintiff that they were permitted to videotape his deposition under the Federal Rules of Civil Procedure, Plaintiff stated that he would not participate in a videotaped deposition. *Id.* Defendants thus sought a Court Order requiring Plaintiff to appear for his videotaped deposition.

Also on October 1, 2009, Plaintiff filed a "Motion for a protective orders against videotaped deposition on Tuesday, October 6, 2009." Docket No. 186. Plaintiff essentially

3

admitted that he had agreed to give his deposition on October 6, 2009, but stated that Defendants unilaterally changed "sealed agreements with the plaintiff with respect to methods of recording at depositions and also with actual dates of depositions."[1]  Docket No. 186, p. 3.  Plaintiff argued that the undersigned had issued an Order that the parties would take part in only mutual agreements with regard to depositions, and that he had not agreed to give a video deposition.[2]  Plaintiff further argued:

> "The plaintiff suspects that the defendants might place the video tape depositions on the internet for worldwide exposure on the worldwide web."

*Id.* at 21.  Plaintiff also noted that, because Defendants already had his birth date and social security number, "defendants and/or their attorneys might be in need of a photograph to complete the fraud scheme [apparently referring to possible identity theft]."  *Id.,* at 22.

Plaintiff's Motion and supporting Memorandum consisted of 67 pages of documents, but never once did Plaintiff suggest that he had any health problems that might be adversely affected by a videotape deposition.  (The relevance of this point will be discussed in greater detail below.)

The same day the foregoing Motions were filed, the undersigned entered an Order granting the Motion for a conference and stating in part, "The parties shall contact Courtroom Deputy, Holly Vila, to schedule a conference call."  Docket No. 182.

On the morning of Friday, October 2, 2009, Defendant Yellow Transportation filed a "Supplement to Motion for Resolving Discovery Dispute."  Docket No. 188.  That Supplement

---

[1]  Plaintiff did not explain his reference to "sealed agreements."

[2]   As stated above, however, the Court's discussion with Plaintiff and counsel for Defendants referred to cooperation in setting dates for depositions, not to the methods of recording depositions.

essentially stated that, despite the Court's Order regarding scheduling a telephone conference, Plaintiff had failed to cooperate and appeared "to be evading Defendants' counsel's request to provide his availability for a conference call with the Court on Friday, October 2, 2009." *Id.*, p. 2. Defendants further stated that, as of October 2, 2009, "Plaintiff has failed to communicate with Defendants' counsel regarding his availability." On the morning of October 2, 2009, the undersigned entered an Order setting a telephone conference for that afternoon at 3:00 p.m.[3] Docket No. 189.

As is reflected in the Order entered following that telephone conversation, Plaintiff did not participate in the telephone conference call. Docket No. 190. That Order explained the situation in part as follows:

> [A]t 11:36 a.m. on October 2, the undersigned entered an Order setting the referenced telephone conference call for 3:00 p.m. on the afternoon of October 2. Docket No. 189. *Additionally, Courtroom Deputy, Holly Vila, called Plaintiff and left him two voice mail messages at approximately 9:55 a.m. and 11:30 a.m.* Ms. Vila's first voice mail message was simply a request that Plaintiff call her. Ms. Vila's second voice mail message advised Plaintiff that the Court had set a conference call for 3:00 p.m.
>
> Defendants' counsel participated in the conference call at 3:00 p.m. on October 2, but *neither the undersigned nor any of his staff members has heard anything from Plaintiff.*
> . . .
> Plaintiff has shown absolutely no reason for the Court to order that

---

[3] The undersigned set the hearing for the afternoon of October 2, 2009, for several reasons. The parties had been attempting to schedule Plaintiff's (and Defendants') depositions since at least June, 2009. Plaintiff had agreed to give his deposition on October 6, and, while raising objections as to the videotaping of his deposition, he did not argue that October 6 had somehow become inconvenient for him to give his deposition. Additionally, the Court felt it appropriate to attempt to resolve the issue on Friday afternoon, prior to Plaintiff's scheduled deposition on Tuesday morning, rather than waiting until Monday, October 5, to hold the conference call.

his deposition not be video taped.

　　　　　　　　　　. . .

> *Plaintiff is warned that, if he fails to appear for his properly-noticed video taped deposition on October 6, 2009, at 9:30 a.m., at the offices of Bass, Berry & Sims PLC, 315 Deaderick Street, Suite 2700, Nashville, Tennessee 37238, he faces sanctions under the Federal Rules of Procedure [sic], which include the dismissal of this action in whole or in part.*

*Id.*, p. 2-3.

Plaintiff has never explained why he failed to contact Courtroom Deputy, Holly Vila, in response to the voice mail messages she left him, nor has he explained why he did not participate in the referenced conference call.[4]

On October 6, 2009, the day his deposition was set, Plaintiff filed a "Motion to Terminate Videotape Deposition . . . ." and a supporting Memorandum. Docket Nos. 206, 207. The following day, the Yellow Transportation Defendants[5] filed a Motion to Dismiss, a supporting

---

[4] Approximately one month later, on November 2, 2009, Plaintiff filed a Motion to Recuse the undersigned, "for his past connection as a partner and member of Bass, Berry & Sims PLC and bias against the Plaintiff." Docket No. 35. With regard to alleged bias, Plaintiff referred to, "The range of unusual orders against the plaintiff by the Magistrate Judge including hearing his absent [sic] . . . ." *Id.*, p. 2. The undersigned denied that Motion in an Order noting that, while Plaintiff did not explain the particulars of his allegation of unusual orders, the undersigned believed that it concerned the referenced situation, in which Plaintiff sought to avoid, at essentially the last minute, his properly-noticed videotape deposition. Docket No. 318. Plaintiff sought review of that Order by Judge Echols (Docket Nos. 331, 332), but he never disputed the factual statements in the Orders entered by the undersigned in connection with the videotape deposition. He never explained why he did not return Ms. Vila's phone calls or why he did not participate in the conference call. Judge Echols subsequently upheld the undersigned's Order denying the recusal motion, referring to part of Plaintiff's argument as "frivolous." Docket No. 357, p. 3.

[5] The "Yellow Transportation Defendants" are Yellow Transportation, Inc., Larry Briney, Carl Hastings, and Keith Dailey.

Memorandum, and two Affidavits.  Docket Nos. 208, 209, 210, 211.  The thrust of Defendants'

Motion was that, while Plaintiff had technically "appeared" for his video tape deposition on

October 6, 2009, he "initially refused to sit for his video taped deposition and outright refused to

proceed with his deposition unless he could wear a disguise, which included a large Afro wig, a

large bushy beard, sunglasses, and a hood that was pulled over his head."  Docket No. 209, p. 1-

2.  Defendants' supporting Memorandum, which cited to the Affidavit of one of their counsel,

stated in part as follows:

> On Tuesday, October 6, 2009, Plaintiff arrived at Defendants'
> counsel's local office of Bass, Berry & Sims PLC, in full disguise.
> Specifically, Plaintiff arrived at Defendants' local counsel's office
> dressed in all black and wearing several layers of clothing.
> Plaintiff's outermost garment appeared to be a large nylon athletic
> top with a hood that Plaintiff wore over his head.  Plaintiff also
> wore a large black, bushy Afro wig, which jutted out under
> Plaintiff's hood.  Plaintiff's Afro wig covered his entire forehead
> down to the black sunglasses he was wearing.  In addition, Plaintiff
> wore a similarly fake bushy mustache and beard.  Plaintiff's face
> was completely hidden.  Indeed, in order to speak, Plaintiff had to
> move his false mustache out of his teeth.
>
> Plaintiff apparently disguised his identity for the sole purpose of
> distorting his appearance during his videotaped deposition, as
> Plaintiff's own Website and Facebook page demonstrate that he
> did not have a large bushy beard, nor does he wear a large Afro or
> have a mustache that is so large that it covers his teeth.
>
> Prior to the start of the deposition, Defendants 'counsel repeatedly
> requested that Plaintiff remove his wig, beard, mustache and
> sunglasses for the videotaped deposition.  Indeed, for over forty
> minutes, [Defendants' counsel] attempted to convince Plaintiff to
> remove his wig, mustache and beard. [Defendants' counsel]
> explained to him that by wearing a disguise, Plaintiff was impeding
> Defendants' ability to see him face [sic] and judge his credibility.
> Plaintiff agreed only to remove his sunglasses.  Plaintiff steadfastly
> refused, however, to remove the large Afro wig or the large bushy
> beard.  As a result of Plaintiff's refusal to proceed with the

deposition without his full disguise, Defendants' counsel
suspended the deposition.

Docket No. 209, p. 3-4 (citations omitted).

Plaintiff's Motion and supporting Memorandum told a very different story. Plaintiff

argued that the videotaping procedure was unreasonable, and that it annoyed, embarrassed,

oppressed, and harmed him. Docket N o. 206, p. 1. He stated that Defendants' attorney wanted

to unlawfully sexually harass him by "begging the Plaintiff with numerous request to remove

some of his clothing and some of his hair. . . ." *Id.* Plaintiff took these comments as an

"unwelcome sexual request." *Id.* Plaintiff stated that the videotape deposition "might have been

a pornography filming session . . . ." *Id.*

Plaintiff later filed a Response to Defendants' Motion to Dismiss, stating in part:

> I did not appear at the Offices of Bass, Berry & Sims PLC in full
> disguise as stated in the affidavits [*sic*] of Carl H. Glueck. In fact,
> Carl Glueck had a unlawful pornography production filming
> session set up at the Offices of Bass, Berry & Sims PLC fully
> disguise as a court ordered videotape deposition. Carl H. Glueck
> wanted to make a videotape of me with no clothing by asking me
> to remove my clothing and be naked for his video tape deposition.
>
> . . .
>
> Since I would not remove my clothing and my hair after the
> numerous unwelcome requests which were all unwelcome sexual
> harassment, Carl H. Glueck fabricated his affidavit to punish me
> with a dismissal of this complaint while seeking fraudulent fees.
>
> . . .
>
> When I ask Carl H. Glueck for a reason for his strange requests,
> Carl H. Glueck stated that I will appear more appealing and will
> look better on the video tape. The tone and mannerism of his voice
> while making the strange requests were to be consistent with a
> married woman communicating with her husband and not at all
> professional like a person at work.

8

. . .

> Carl H. Glueck did not have a problem with my appearance
> although I was wearing the exact same outfit and hair at the East
> Nashville Law Firm of Steiner and Steiner while conducting a
> deposition the day before he had a problem at the law firm of
> Offices of Bass, Berry & Sims PLC when he attempted to fraud me
> into removing my clothing and my hair prior to filming a
> pornography videotape which he masqueraded as a court ordered
> deposition to force me to take part against my will.[6]

Docket No. 217, p. 2, 3, 6 (footnote added).

Plaintiff further complained about the age and quality of the videotape recording equipment, stated that the "heat and light from the video recording equipment was not normal for videotaping," and gave Plaintiff "flash red, burning, and itchy eyes after just a few minutes in the room." Docket No. 206, p. 2. Plaintiff complained that the light was extremely bright and that he also "got a heat induced headache." *Id.* Plaintiff emphasized that he did not have on a "face mask," or "a Halloween face mask or a Halloween costume." Docket No. 213, p. 7.

Defendants subsequently filed two Affidavits from the videographer who was present to videotape Plaintiff's October 6 deposition, Cheryl Erwin. Docket Nos. 221, 234. Ms. Erwin stated in her Affidavit that Plaintiff arrived at the deposition "wearing what appeared to be a disguise: a wig, fake beard, mustache, dark sunglasses and wearing a hood." Docket No. 221, p. 2. She stated that she never heard anyone, including Mr. Glueck, ask Plaintiff to remove his clothing, with perhaps the exception of his hood. *Id.* She stated that her equipment was not old or outdated, that Plaintiff did not inspect her equipment, that she does not aim lights at deponents in video depositions, and that she attempted to use one camera light for Plaintiff's deposition

---

[6] Plaintiff took the depositions of some of the individual Defendants on October 5. Insofar as the record shows, these depositions were not videotaped, and, presumably Mr. Glueck was not concerned with Plaintiff's appearance under those circumstances.

9

which she never aimed directly at him. *Id.,* p. 2-3. Plaintiff thereafter filed a "Motion to inform the Court" that the first Affidavit of Ms. Erwin was a "falsified document . . . unlawfully fabricated to take part in fraud upon the Court . . . ." Docket No. 232.

Plaintiff subsequently accused Defendants' counsel of "misleading the facts with blatant lies" about the aborted October 6 videotape deposition. Docket No. 306, p. 1. Plaintiff also accused Defendants' out of state counsel of taking part in the unauthorized practice of law in Tennessee. Docket Nos. 264, 265, 267, 268. Plaintiff later claimed that the fact that no local attorney representing Defendants had appeared at the aborted videotape deposition was somehow improper. Docket No. 295. While Plaintiff's actions in this regard are not directly related to his failure to appear for his deposition, the Court will discuss this issue briefly in order to provide further context.

On December 31, 2008, shortly after this action was filed, the Yellow Transportation Defendants sought pro hac vice admission for attorneys Carl H. Glueck and Lisa M. Jones. Docket Nos. 52, 54. Without opposition from Plaintiff, the undersigned granted those two Motions. Docket Nos. 76, 77. Plaintiff sought a de novo review of the Court's pro hac vice Orders by Judge Echols, arguing that the Court's Orders "might have advocated allowing out-of-state attorneys to practice law unlawfully in Nashville . . . ." Docket No. 82, p. 1. On March 4, 2009, Judge Echols entered an Order denying Plaintiff's Motion for Reconsideration and holding that these two attorneys had properly been admitted pro hac vice. Docket No. 98.

Apparently not content with Judge Echols' ruling, approximately 8 months later, Plaintiff began filing a series of documents, which he characterized as "motions," and all of which related to the fact that Mr. Glueck and Ms. Jones had been granted permission to practice pro hac vice.

Docket Nos. 264, 273, 278, 284, 287, 290, 295. A discussion of those "motions," all of which were denied, can be found in the undersigned's Order entered February 10, 2010 (Docket No. 316). That Order stated in relevant part as follows:

> *Plaintiff's arguments are completely frivolous.* If Plaintiff were an attorney, the undersigned would recommend that he be sanctioned for his conduct with regard to the seven "motions" he has filed. Instead of doing so, however, the Court will warn Plaintiff that he cannot continue to file frivolous Motions with this Court, particularly when the Court has already decided an issue. If Plaintiff disagrees with rulings made by the undersigned, he can seek review of those rulings by Judge Echols. If Plaintiff disagrees with rulings made by Judge Echols, he may appeal those rulings to the Sixth Circuit, pursuant to applicable law and rules. *He cannot, however, repeatedly inundate the Court (and Defendants' counsel) with frivolous filings, especially after the Court has already ruled on an issue. If Plaintiff continues this conduct, the undersigned will recommend that sanctions be imposed upon him, including paying Defendants' attorneys fees and a possible dismissal of this action.*

*Id.*, p. 5 (emphasis added).

Subsequently, the undersigned entered an Order concerning the aborted videotape deposition. Docket No. 386. That Order denied Defendants' Motion to Dismiss, but granted Plaintiff's Motion to Compel. That Order, entered April 1, 2010, stated in part as follows:

> Defendants' Alternative Motion to Compel (Docket No. 208), which seeks an Order requiring Plaintiff to reappear for his deposition, is GRANTED. Counsel for Defendants and Plaintiff shall confer and pick a date within thirty (30) days of the date of entry of this Order for Plaintiff's videotape deposition to occur, which date shall be confirmed with Courtroom Deputy, Holly Vila. That deposition will be taken in the chambers of the undersigned, 6th Floor, United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

Docket No. 386, p. 12.

11

Thus, the Court ordered Plaintiff to "reappear for his deposition," and the Order made it clear that that deposition was to occur within thirty (30) days of April 1. The undersigned also thought it appropriate to order that Plaintiff's deposition be taken in the chambers of the undersigned, so that the undersigned could quickly address any issues that might have arisen.

The next 30 days came and went without either party contacting Ms. Vila concerning Plaintiff's videotape deposition.[7] On April 20, 2010, however, Defendants filed the instant Motion to Dismiss/Motion to Compel. Between April 8, 2010, and April 21, 2010, Plaintiff filed 5 sets of materials, virtually all of which appeared to be calculated to delay or thwart the videotape deposition that the undersigned had, at that point, twice ordered. Specifically, Plaintiff filed the following materials: (1) a document headed "The Plaintiff motions for A Protective Order to Allow him to face the Intense Visible Lights, Ultraviolet Light, Black Light, Visible light and the by product of the videotaping lights which includes high heat, Thermal Radiation, Electromagnetic Radiation, and Black Body Radiation with his BACK to protect his eyes from at least Temporary Retinal Burn, Welder's Flash, and Snow Blindness which will be caused if the Plaintiff is coerced to face the equipment light" (Docket No. 395); (2) a document headed "The Plaintiff motions to terminate The Defendants Deposition At The Court House Because The defendants are using Annoying and Harassing Methods to Not Take Their Own Deposition Of The Plaintiff After Over Ten (10) Available Dates Were Provided By The Plaintiff" (Docket No.

---

[7] The Court's April 1 Order provided that Plaintiff's deposition was to occur within thirty (30) days of that date. Thirty days following April 1 was May 1, which was a Saturday. Pursuant to Rule 6(a)(1), Plaintiff could have complied with the Court's Order by giving his deposition any time in April or on May 3. As will be discussed below (p. 14), however, while Plaintiff initially proposed May 3 as a date for his deposition, he later withdrew that date. Docket No. 410, p. 2.

12

398); (3) a document headed "The plaintiff motions for A Protective Order to restrict the defendants' Videotape Deposition At The Federal Courts by allowing NO artificial lighting associated with the videotape recording device, NO ZOOM LENS and NO ZOOMING IN ON ANY BODY PARTS, NO EDITING OF THE VIDEOTAPE RECORDING AND NO MUSICAL ADDICTIONS, NO FULL COLOR RECORDING AND ONLY BLACK AND WHITE RECORDING, No Commercial Use of Tape(s) Such As Posting Footage on the Internet NO Use of The Videotape for Evidence Only Discover Use Allowed NO Posting of Videotape Footage On The Court's Electronic Filing System No Posting of Videotape Footage on any Website, Television, or Movie No More Than One Single Stationary Camera Which Must Be Recording Continuously NO Videotape Recording Operator Cheryl Erwin for bias acts in favor of the defendants"[8] (Docket No. 412, footnote added); (4) a document headed "The plaintiff motions for a Pretrial Telephone Conferences including the defendants and The Magistrate Judge to resolve the issues of the Videotape Deposition at the Court House Such As But Not Limited To The Date of the Deposition and the use of artificial lights" (Docket No. 416); and (5) a 21-page affidavit of Plaintiff in support of the foregoing motion (Docket No. 418).

On April 20, 2010, the Affidavit of Lisa M. Jones, one of counsel for the Yellow Transportation Defendants, was submitted in support of the instant Motion to Dismiss. Docket No. 410. That Affidavit states in relevant part as follows:

> 2. On April 5, 2010, I e-mailed Plaintiff Joseph Bertrand ("Plaintiff") to inquire as to whether he was available to have his

---

[8] As discussed above, Cheryl Erwin was the videographer who had been hired to videotape Plaintiff's October 6 deposition, and who later submitted two Affidavits regarding the occurrences at the aborted deposition. The Court has never seen an instance in which a party or witness objected to the use of a particular videographer or Court Reporter.

13

deposition taken on April 22 or April 23, 2010.

3. On that same day, Plaintiff responded to my e-mail inquiry and stated that he was not available on April 22 or April 23, 2010. He also stated that he was available May 1 through May 4, 2010 to have his deposition taken.

4. I explained to Plaintiff his deposition could not be taken May 1 through May 4, 2010 because those were on which [*sic*] Court was not open and they were outside of the Court's 30-day time limitation.

5. On the evening of Tuesday, April 6, 2010, Plaintiff stated that he was available to have his deposition taken by the end of the week, on either April 8 or April 9, 2010.

6. On Wednesday, April 7, 2010, I explained to Plaintiff that Defendant could not take his videotape deposition on such short notice. Alternatively, I proposed that Defendants take his deposition on April 20 or April 21, 2010.

7. Plaintiff rejected the April 20 and April 21, 2010 dates. Instead, he offered to have his deposition taken on Monday, April 12, 2010 or Tuesday, April 13, 2010. Counsel for Defendants were not available on those dates.

8. On April 8, 2010, I offered Plaintiff three additional dates to have his deposition: April 26, April 29 or April 30, 2010.

9. On Friday, April 9, 2010, Plaintiff rejected the April 26, April 29 and April 30, 2010 dates and proposed that his deposition be taken for one-half day on April 14, 2010 or April 15, 2010. Plaintiff also filed a "Motion to Terminate the Defendants' deposition at the Courthouse . . . ."

10. On Monday, April 12, 2010, I inquired as to whether Plaintiff was available to have his deposition taken on May 3 or May 4, 2010, dates on which Plaintiff had previously stated he was available, if the Court agreed to extend the May 1, 2010, deadline.

11. On April 13, 2010, Plaintiff rejected the May 3 and May 4, 2010, proposed dates.

14

Docket No. 410, p. 1-2.

On April 22, 2010, Ms. Jones filed a second Affidavit, which states in relevant part as follows:

> 2. On April 21, 2010, Plaintiff Joseph Bertrand ("Plaintiff") called counsel for Defendants, Michael Moschel, Carl Glueck, and me. Plaintiff left messages for me and Mr. Moschel, but actually spoke with Mr. Glueck about scheduling his deposition.
>
> 3. Shortly after his conversation with Mr. Glueck, Plaintiff left a message with Mr. Glueck's receptionist that he was available on April 27, 2010, or April 28, 2010, for his deposition.
>
> 4. I responded to Plaintiff's phone message by e-mail, reminding that Defendants' counsel had already offered him their dates of availability for the week of April 26, 2010 (specifically, April 26, 2010, April 29, 2010, and April 30, 2010), and that Plaintiff had now purposely selected the two dates that he knew Defendants' counsel was unavailable. . . .
>
> 5. Shortly thereafter, Plaintiff sent an email to the parties offering the same dates for his deposition: April 27 and April 28, 2010.

Docket No. 420, p. 1-2.

Also on April 22, 2010, Plaintiff filed a document headed "The Plaintiff Joseph Bertrand motions To inform the Court That The AFFIDAVIT OF LISA M. JONES dated April 22, 2010, Is purely a falsified document As Evident by at Least the Time Stamps on The emails." Docket No. 422.

According to the Affidavits of Ms. Jones, in early April, Defendants offered Plaintiff 7 days in April upon which they could take his deposition: April 20, 21, 22, 23, 26, 29, and 30. It must have been apparent to Plaintiff, on April 8, 2010, that the dates Defendants' counsel had available during the week of April 26 were April 26, 29, and 30. Plaintiff apparently seized on

15

this fact, and offered to give his deposition on April 27 or 28, dates that he must have known were not available to Defendants' counsel.

Despite this situation, on April 28, 2010, Plaintiff filed a document headed, "The Plaintiff motions for A Court Order to Return to Work With at Least Back Pay and Any Other Compensation AS A Discovery Sanction for the Deliberate and Unlawful Rejection Of At Least April 27, 2010 and April 28, 2010 Proposed Dates For the Videotape deposition at The court house, *In the Alternative,* the plaintiff ask the court to set a date for the videotape deposition at the court house." Docket No. 424. With the foregoing Motion, Plaintiff submitted a Memorandum of Law (Docket No. 425) and his own 75-page Affidavit (Docket No. 426). In these materials, Plaintiff made a series of frivolous arguments all of which were premised upon the argument that he offered to give his deposition on April 27 or 28, but that Defendants refused to take his deposition on those days. Based on this frivolous argument, Plaintiff has again accused Defendants of attempting to perpetrate a "fraud on the Court," and of attempting essentially to "trap" Plaintiff by refusing to depose him so that they could support a Motion to Dismiss on grounds that Plaintiff had failed to give his deposition.[9] Docket No. 424, p. 3.

In several different documents, Plaintiff offers his versions of the possible dates that were discussed. Unfortunately, Plaintiff's "explanations" are inconsistent. In the heading of a Motion Plaintiff filed on April 9, 2010, Plaintiff states that he provided "Over Ten (10) Available Dates . . . ." Docket No. 398, p. 1. In the same Motion, Plaintiff stated in part:

> After proper notice was provided by the plaintiff, the defendants

---

[9] Plaintiff has accused Defendants and/or their counsel of attempting to perpetrate a "fraud on the Court," numerous times throughout this litigation. *See, e.g.,* Docket Nos. 73, 74, 86, 92, 95, 152, 186, 187, 203, 206, 217, 218, 232, etc.

16

were offered at least and only at least the following dates but they deliberately refused to select any. The dates are:

<u>A</u>
April 8, 2010
<u>B</u>
April 14, 2010
<u>C</u>
April 9, 2010
<u>D</u>
April 12, 2010
<u>E</u>
May 1, 2010
<u>F</u>
April 14, 2010
<u>G</u>
April 15, 2009
<u>H</u>
April 13, 2010
<u>I</u>
May 2, 2010
<u>J</u>
May 3, 2010
<u>K</u>
May 4, 2010

*Id.,* p. 7-8.

Accounting for the fact that Plaintiff listed April 14 twice, the total number of dates Plaintiff listed is 10, *i.e.*, April 8, 9, 12, 13, 14, 15, and May 1, 2, 3, and 4. But May 1 and 2 were a Saturday and Sunday, and May 4 was outside the thirty (30) day time period set by the Court for the deposition to occur. Additionally, in his Response to the instant Motion to Dismiss, which was filed April 28, 2010, Plaintiff stated in part that he had offered April 14, 2010, as a possible date for his deposition, but that he offered only "at least ½ a day" because he had an important medical appointment. Docket No. 427, p. 5.

In another Motion Plaintiff filed on April 28, 2010, however, Plaintiff stated that he

17

"provided over seventeen (17) proposed dates including but not limited to April 27, 2010, and April 28, 2010." Docket No. 424, p. 33. In that same Motion, Plaintiff stated as follows:

> After proper notice was provided by the plaintiff, the defendants were offered at least and only at least the following dates but they deliberately refused to select any. I responded to every email that the defendants sent me about the videotape deposition but the defendants basically ignored all my rejects [*sic*]. The dates are:
>
> | | |
> |---|---|
> | A. | April 27, 2010 |
> | B. | April 28, 2010 |
> | C | April 2, 2010 to April 15, 2010 |
> | D. | April 8, 2010 |
> | E. | April 14, 2010 |
> | F. | April 9, 2010 |
> | G. | April 12, 2010 |
> | H. | May 1, 2010 |
> | I. | April l4, 2010 |
> | J. | April 15, 2009 |
> | K. | April 13, 2010 |
> | L. | May 2, 2010 |
> | M. | May 3, 2010 |
> | N. | May 4, 2010 |

Docket Entry No. 424, p. 36.

Accounting for the fact that Plaintiff has again listed April 14 twice, and accounting for the fact that a number of the specific dates Plaintiff has listed occurred between April 2 and April 15 (which Plaintiff presents as a single entry in "Item C"), Plaintiff has listed 18 dates (assuming that the weekends occurring between April 2 and April 15 are not counted).

In other words, Plaintiff first listed 10 specific dates that he proposed. Two of those dates were on the weekend, and a third was outside the time period specified for the deposition to occur. In another filing, however, Plaintiff took the position that he had provided 18 dates to Defendants for his deposition. In this later filing, Plaintiff listed 10 of those dates as "April 2,

18

2010 to April 15, 2010." In his earlier-filed document (which was filed on April 9), Plaintiff did not list April 2, April 5, April 6, or April 7, which were week days during the period April 2 to April 15.

Importantly, Plaintiff does not supply any specific documentation by which he advised Defendants about any of these dates, except the dates of April 27 and 28.

As discussed above, Plaintiff also raised a number of objections to giving his videotape deposition based upon health reasons. For example, Plaintiff argued that he had high blood pressure. Docket No. 206, p. 5. He also supplied the Court with a number of documents concerning "preventing eye damage." He states that he has a Pterygium, which he defines and explains as follows:

> An abnormal, but usually non-cancerous, growth on the corner of the eye near the nose. A Pterygium can grow over the cornea, partially blocking vision, and sometimes requires surgery to be removed.

Docket No. 405, p. 3.

But Plaintiff provides no specific support, medical or otherwise, for the proposition that any eye condition or medical condition he may have has anything to do with giving a videotape deposition. Plaintiff's arguments that he cannot give a videotape deposition because he has high blood pressure are ludicrous, yet he continues to assert the arguments again and again. *See, e.g.,* Docket Nos. 206, p. 5; 213, p. 5-6; 227, p. 1; 245, p. 1,3; 418, p. 4-5; 428, p. 9.

More importantly, Plaintiff never raised any of these health concerns prior to October 6, 2009 when he was attempting to avoid having his videotape deposition taken the first time. See Docket Nos. 186, 187.

Plaintiff has filed a number of unusual Motions in this action, many of which are entirely frivolous. One of the most interesting, however, is a document that he filed on May 11, 2010, which is headed, "The Plaintiff Joseph Bertrand motions to inform the court that he inform the Defendants that on 4/30/2010 and 4/29/2010 he was required to comply with Section 207(b) of the Federal Clean Air Act Public Chapter No. 339 and TCA 55-4-128 by testing his vehicle and register his vehicle before the state of Tennessee deadline or get a ticket." Docket No. 429. Plaintiff essentially explains that he was unable to give his deposition on April 29 or April 30 because he was busy having his automobile inspected and tested under the State's/Metro Government's automobile emissions testing procedure.

Plaintiff offers no explanation, however, for why it would have taken him two full days to have his vehicle tested and inspected. He offers no explanation for why he could not have had his vehicle tested and inspected at some time earlier in the month of April, so that he would have been available to give his deposition on April 29 or 30. There is no indication that, before May 11, 2010, Plaintiff ever advised Defendants that he could not give his deposition on April 29 or 30 because he was having his car inspected.

Plaintiff has also repeatedly referred to the fact that he is unemployed, and he has filed a number of e-mails that appear to show he is attempting to secure a job. While he implies that his job search may have hindered his ability to give a deposition within the time allowed by the Court, he never specifically explains why he could not give his deposition on one of the 7 dates in April that Defendants proposed.

The Court finds it inconceivable that Plaintiff, if he had been interested in doing so, could not easily have found a date within the prescribed time period upon which to give his videotape

20

deposition.

## II. <u>Dismissal Standards</u>

### A. <u>Rule 37(b)</u>

The instant Motion is filed pursuant to Fed. R. Civ. P. 37(b), which provides in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
>    (A) *For Not Obeying a Discovery Order.* If a party . . . fails to obey an order to permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
> . . .
>
> (v) dismissing the action or proceeding in whole or in part . . .

As discussed above, on April 1, 2010, the Court granted Defendants' Motion requiring Plaintiff to reappear for his deposition. The Court made it clear that that deposition was to occur within thirty (30) days of April 1, 2010. Plaintiff did not abide by the Court's Order.

The instant Motion seeks an extreme sanction, namely the dismissal of Plaintiff's lawsuit. The Sixth Circuit has set forth four factors for a court to consider in ruling on such a Motion, namely:

> (1) Whether the party's failure to cooperate in discovery is due to willful misconduct, bad faith, or fault;
>
> (2) Whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery;
>
> (3) Whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
>
> (4) Whether less drastic sanctions were imposed or considered before dismissal was ordered.

21

*Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (citation and internal quotation marks omitted).

The *Harmon* Court discussed *Link v. Wabash Railroad Co.,* 370 U.S. 626 (1962), which upheld a district court's decision to dismiss a complaint for failure to prosecute. *Id.*, p. 367. In *Link*, one of the factors mentioned by the Court was that the "drawn-out history of the litigation" implied that plaintiff "had been deliberately proceeding in dilatory fashion." 110 F.3d at 367, *quoting* 370 U.S. at 633.

In discussing the first factor, the *Harmon* Court stated that one consideration was whether there has been "a clear record of delay or contumacious conduct." 110 F.3d at 367 (citation omitted). Additionally, the Sixth Circuit has stated that, in analyzing the first factor, the Court should consider whether there has been "an intent to thwart judicial proceedings or a reckless disregard for the effect of [Plaintiff's] conduct on those proceedings." *Schafer v. City of Defiance Police Dept.,* 529 F.3d 731, 737 (6th Cir. 2008) (citation omitted). Moreover, the burden is upon Plaintiff to establish that his failure to comply was due to inability, and not upon Defendants to establish willfulness, bad faith, or fault of the Plaintiff. *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) *citing Regional Refuse Sys., Inc., v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 188).

Black's Law Dictionary defines "contumacious conduct" as, "A willful disobedience of a court order." Black's Law Dictionary (7th Ed. 1999). Plaintiff has committed contumacious conduct in failing to abide by the Court's Order that he reappear for his deposition within a specified time period.

In considering the lengthy history of this action and Plaintiff's conduct as discussed

22

above, it is also abundantly clear that Plaintiff has displayed an intent to thwart judicial proceedings. Plaintiff has gone to extraordinary lengths to avoid giving a videotape deposition, which the undersigned has twice ordered him to do. The Court concludes that Plaintiff's failure to comply with the Court's Order was due to willful misconduct, bad faith, or fault.

Second, Defendants have been prejudiced by Plaintiff's conduct. Defendants have had to initiate and participate in several discovery conferences with the Court and, in some instances, with Plaintiff as well. Defendants incurred time and expense for their attorneys to attend the October 6 scheduled deposition of Plaintiff, which was aborted when he showed up "in disguise."

Additionally, when the Court made it clear for a second time that Plaintiff was to give his videotape deposition, Plaintiff filed numerous documents, which, when viewed in the context of his previous conduct, indicate to the Court that Plaintiff was at least attempting to delay his videotape deposition, if not avoid it entirely. Defendants had to respond to Plaintiff's lengthy filings.

Defendants cannot adequately prepare for the trial of this case, which has been set by Judge Campbell (Docket Entry No. 439), without taking the deposition of Plaintiff.

Third, the Court specifically warned Plaintiff that if he failed to appear for his videotape deposition on October 6, he faced sanctions which included the dismissal of this action in whole or in part. Docket No. 190, p. 2-3. Plaintiff was also warned that his conduct in filing frivolous Motions, especially with regard to issues the Court had already decided, could lead to a dismissal of his case. Docket No. 316, p. 5.

Fourth, less drastic sanctions were imposed upon Plaintiff. The Court might well have

dismissed this action based upon Plaintiff's conduct at the aborted videotape deposition on October 6. The Court chose not to do so, however, but instead ordered that Plaintiff reappear for his videotape deposition. Moreover, any less drastic sanction the Court could now impose upon Plaintiff would certainly involve an Order that he appear for his videotape deposition. Plaintiff has blatantly ignored one Court Order by not appearing at all, and he has essentially violated a second Court Order by his conduct at the aborted October 6 deposition. In short, the Court has no reason to believe that, if it did impose a less drastic sanction upon Plaintiff, he would comply with it.

Thus, the Court concludes that Plaintiff's claims should be dismissed with prejudice as a sanction for his violation of Fed. R. Civ. P. 37(b)(2)(A)(v).

### B. Inherent Power

A number of federal district courts in Tennessee have entered orders in cases involving persons who abuse the judicial process by repeatedly filing frivolous lawsuits. *See, e.g., McGhee v. City of Memphis*, 2008 U.S. Dist. LEXIS 7723 (W.D. Tenn.), decided February 1, 2008; *Houston v. Potter, et al.*, 2007 U.S. Dist. LEXIS 39898 (E.D. Tenn.), decided May 30, 2007; *Smith v. Dell, Inc.,* supra; *Farnsworth v. Parker*, 2006 U.S. Dist. LEXIS 19917 (W.D. Tenn.), decided March 2, 2006; *Johnson v. Armstrong*, 2005 U.S. Dist LEXIS 33193 (W.D. Tenn.), decided September 12, 2005. While it does not appear that Plaintiff has filed a number of frivolous lawsuits, it is clear that Plaintiff has filed an abundance of patently meritless and frivolous motions, notices, and other documents in this action.

In *Smith v. Dell, Inc.*, 2007 U.S. Dist. LEXIS 5587 (W.D. Tenn.), decided January 24, 2007, the Court referred to plaintiff there as "a frequent filer of patently meritless lawsuits," and

24

stated, "The actions of this litigant demonstrate a marked propensity to abuse the judicial system in an attempt to harass the defendant as well as the court." *Id.* at *11 (footnote omitted). The *Smith* Court noted that courts have the obligation and authority to prevent this type of abuse. Appellate courts, including the Sixth Circuit, have "endorsed the enjoining of prolific frivolous filers." *Id.*, p. *11-12 (citations omitted). As the Second Circuit has stated:

> Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. If such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private to injunctive relief, the independence and constitutional role of Article III court would be endangered.

*In Re Martin-Trigona*, 737 F.2d 1254, 1261 (2nd Cir. 1984).

Plaintiff's conduct in the case at bar has had the same kind of impact upon the Court that would have resulted from Plaintiff's filing a number of frivolous lawsuits. Each time Plaintiff has filed a frivolous Motion, the Court has had to address it, as have Defendants.

Moreover, very few of Plaintiff's filings have had anything whatsoever to do with the merits of this lawsuit. Instead, Plaintiff has repeatedly pursued tangential issues, such as objecting to the pro hac vice admission of lawyers, attempting to avoid a videotape deposition, attempting to have Defendants and their counsel sanctioned, objecting to a particular videographer, etc.

As discussed above, the undersigned explicitly warned Plaintiff that if he continued to make frivolous filings, especially after the Court had already ruled on an issue, the undersigned *would* recommend that sanctions be imposed upon him, including a possible dismissal of this action. Docket No. 316, p. 5. But Plaintiff has consistently displayed an utter disregard for the

25

Court's Orders, continuing to reassert arguments that the Court has previously rejected.

The undersigned concludes, therefore, that Plaintiff has engaged in conduct which impairs this Court's ability to carry its appropriate functions by his frequent filing of patently meritless motions and materials in this action. This action should be dismissed for this reason as well.

### III. Conclusion

For the foregoing reasons, the undersigned recommends that the instant Motion to Dismiss (Docket No. 408) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. Clifton Knowles
United States Magistrate Judge

26